1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10                          ----oo0oo----

11

12   JOSEPH ROSALES,                 CIV. NO. 2:14-02152 WBS CMK

13            Plaintiff,             MEMORANDUM AND ORDER RE: MOTION
                                     FOR SUMMARY JUDGMENT
14       v.

15   CITY OF CHICO; DAVID BAILEY;
     and DOES 1-10, (in their
16   official and individual
     capacities),
17
              Defendants.
18

19                          ----oo0oo----

20        Plaintiff Joseph Rosales filed this action under 42

21   U.S.C. § 1983 based on defendant Officer David Bailey's use of

22   force following plaintiff's solo car collision.  Officer Bailey

23   and defendant City of Chico now move for summary judgment on all

24   of plaintiff's claims pursuant to Federal Rule of Civil Procedure

25   56.

26   I.   Factual and Procedural Background

27        On June 10, 2014, plaintiff lost control of his car and

28   collided with a concrete planter box and a steel awning that was

                                  1

1  attached to a building.  His car overturned during the accident

2  and ultimately ended up resting on the passenger side.  Plaintiff

3  had his dog in his car and was worried about locating his dog

4  after the accident.

5       When Officer Bailey arrived at the scene, he ordered

6  plaintiff to start climbing out of the driver's side door.

7  Plaintiff did not immediately comply and indicated that he wanted

8  to find his dog.  Officer Bailey then used a pain compliance

9  technique on plaintiff's wrist and helped extract plaintiff as he

10  struggled to climb out of the driver's side door.  After dragging

11  plaintiff away from the accident and ordering him to stay seated

12  on the curb, Officer Bailey allegedly used further force against

13  him.  Two bystanders recorded the incident, with the first video

14  limited to the extraction and the second video including the

15  interactions after the extraction.

16       In his Complaint, plaintiff alleges that Officer Bailey

17  used excessive force and asserts four claims against Officer

18  Bailey and the City of Chico: 1) a § 1983 claim for excessive

19  force in violation of the Fourth Amendment; 2) state law battery;

20  3) state law negligence; and 4) excessive force in violation of

21  the Tom Bane Civil Rights Act, Cal. Civ. Code § 52.1.  Defendants

22  now move for summary judgment pursuant to Rule 56 on all of

23  plaintiff's claims.

24  II.  Legal Standard

25       Summary judgment is proper "if the movant shows that

26  there is no genuine dispute as to any material fact and the

27  movant is entitled to judgment as a matter of law."  Fed. R. Civ.

28  P. 56(a).  A material fact is one that could affect the outcome

2

of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  Alternatively, the moving party can demonstrate that the non-moving party cannot produce evidence to support an essential element upon which it will bear the burden of proof at trial.  <u>Id.</u>

Once the moving party meets its initial burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'"  <u>Id.</u> at 324 (quoting then-Fed. R. Civ. P. 56(e)).  To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  <u>Anderson</u>, 477 U.S. at 252.

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor.  <u>Id.</u> at 255.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury

1    functions, not those of a judge . . . ruling on a motion for

2    summary judgment . . . ."  Id.

3    III. Analysis

4         A.   Substantive Due Process

5              Although plaintiff does not assert a § 1983 claim based

6    on a violation of his substantive due process rights, defendants

7    first seek summary judgment on the ground that Officer Bailey's

8    conduct did not shock the conscience.  The "shocks the

9    conscience" standard, however, governs only claims under the

10   substantive due process clause.  County of Sacramento v. Lewis,

11   523 U.S. 833, 846 (1998); see also Porter v. Osborn, 546 F.3d

12   1131, 1138 (9th Cir. 2008).

13             Moreover, "[w]here a particular Amendment provides an

14   explicit textual source of constitutional protection against a

15   particular sort of government behavior, that Amendment, not the

16   more generalized notion of substantive due process, must be the

17   guide for analyzing these claims."  Albright v. Oliver, 510 U.S.

18   266, 273 (1994) (internal quotation marks and citation omitted).

19   When an individual is seized, "the Fourth Amendment provides an

20   explicit textual source of constitutional protection against

21   [that] sort of physically intrusive governmental conduct, [and]

22   that Amendment, not the more generalized notion of 'substantive

23   due process,' must be the guide for analyzing the[] claims."

24   Graham v. Connor, 490 U.S. 386, 395 (1989).

25             "A person is seized by the police and thus entitled to

26   challenge the government's action under the Fourth Amendment when

27   the officer, by means of physical force or show of authority,

28   terminates or restrains his freedom of movement, through means

                                    4

1  intentionally applied." <u>Brendlin v. California</u>, 551 U.S. 249,

2  254 (2007) (citation and emphasis omitted).  Contrary to

3  defendants' argument, an arrest or detention is not required to

4  give rise to Fourth Amendment protection.  <u>See</u> <u>id.</u>

5       A reasonable jury could find that plaintiff was seized

6  because Officer Bailey used force, including the pain compliance

7  technique, to extract plaintiff from the car and continued to

8  restrict plaintiff's freedom of movement after the extraction.

9  <u>See</u> <u>California v. Hodari D.</u>, 499 U.S. 621, 626 (1991) ("The word

10  'seizure' readily bears the meaning of a laying on of hands or

11  application of physical force to restrain movement, even when it

12  is ultimately unsuccessful.").  Because plaintiff has established

13  a triable issue of fact with respect to whether he was seized,

14  the court will examine his § 1983 claim under the Fourth

15  Amendment as alleged in his Complaint.

16       B.   <u>Fourth Amendment Excessive Force Claim</u>

17            1.   <u>Genuine Dispute as to Violation</u>

18       To comport with the Fourth Amendment, officers'

19  actions must be "'objectively reasonable' in light of the facts

20  and circumstances confronting them." <u>Graham</u>, 490 U.S. at 397.

21  "[T]he jury must determine not only whether the officers were

22  justified in using force at all, but, if so, whether the degree

23  of force actually used was reasonable." <u>Santos v. Gates</u>, 287

24  F.3d 846, 854 (9th Cir. 2002).  "[W]here there is no need for

25  force, <u>any</u> force used is constitutionally unreasonable." <u>Moore</u>

26  <u>v. Richmond Police Dep't</u>, 497 F. App'x 702, 708 (9th Cir. 2012)

27  (quoting <u>Headwaters Forest Def. v. County of Humboldt</u>, 240 F.3d

28  1185, 1199 (9th Cir. 2000), <u>vacated on other grounds</u>, 534 U.S.

1   801 (2001)).

2           Assuming the use of force was necessary, determining
3   the reasonableness of that force "requires a careful balancing of
4   the nature and quality of the intrusion on the individual's
5   Fourth Amendment interests against the countervailing
6   governmental interests at stake." Graham, 490 U.S. at 396
7   (internal quotation marks and citations omitted).  The inquiry
8   necessitates consideration of all of the relevant circumstances,
9   including "(1) the severity of the crime at issue; (2) whether
10  the suspect poses an immediate threat to the safety of the
11  officers or others; and (3) whether the suspect actively resists
12  detention or attempts to escape." Liston v. County of Riverside,
13  120 F.3d 965, 976 (9th Cir. 1997) (citing Graham, 490 U.S. at
14  388).

15          The "most important" factor under Graham is whether the
16  suspect posed an "immediate threat to the safety of the officers
17  or others." Smith v. City of Hemet, 394 F.3d 689, 702 (9th Cir.
18  2005) (quoting Chew v. Gates, 27 F.3d 1432, 1441 (9th Cir.
19  1994)).  "'A simple statement by an officer that he fears for his
20  safety or the safety [of] others is not enough; there must be
21  objective factors to justify such a concern.'" Bryan v.
22  MacPherson, 630 F.3d 805, 826 (9th Cir. 2010) (quoting Deorle v.
23  Rutherford, 272 F.3d 1272, 1281 (9th Cir. 2001)).  "A desire to
24  resolve quickly a potentially dangerous situation is not the type
25  of governmental interest that, standing alone, justifies the use
26  of force that may cause serious injury." Id. (quoting Deorle,
27  272 F.3d at 1281).

28          Whether an officer used excessive force under the

1   Fourth Amendment is a question for the jury, which "almost always

2   turn[s] on a jury's credibility determinations." Smith, 394 F.3d

3   at 701.  "Because such balancing nearly always requires a jury to

4   sift through disputed factual contentions, and to draw inferences

5   therefrom, [the Ninth Circuit has] held on many occasions that

6   summary judgment or judgment as a matter of law in excessive

7   force cases should be granted sparingly."  Santos, 287 F.3d at

8   853.

9        Here, defendants contend that plaintiff's failure to

10  immediately climb out of his overturned car posed a serious risk

11  to the safety of the officer, plaintiff, and the public because

12  the steel awning could have fallen.  Officer Bailey testified

13  that when he first arrived and was assessing the situation, a

14  bystander told him that the awning was "essentially being pulled

15  away from the attachment point at the building and that he

16  believed that the awning was going to collapse."  (Apr. 1, 2015

17  Bailey Dep. at 30:23-31:11.)  It appeared to Officer Bailey that

18  the front beam was "seriously compromised" and "had been

19  completely sheared off and was just being suspended there."  (Id.

20  at 31:12-17.)  An eye witness at the incident also testified that

21  she heard the awning making creaking noises.  (Beckham Dep. at

22  20:12-23.)

23       Plaintiff, on the other hand, testified that one of the

24  supporting beams of the awning was bent, but that the beam was

25  still attached to the awning.  (Rosales Dep. at 70:6-16.)

26  Plaintiff recognized that the awning was tilting, as depicted in

27  pictures, but indicates that it was still attached in the back

28  and that he did not perceive any risk of the awning falling.

1   (Id. at 78:15-22, 79:22-25, Exs. B, C.)  Neither the videos nor

2   the pictures would preclude a jury from finding plaintiff's

3   assessment about the stability of the beam and awning persuasive.

4   There is also no evidence before the court suggesting that the

5   awning fell after the accident.

6          Plaintiff has therefore raised a triable issue of fact

7   with respect to whether Officer Bailey was mistaken in believing

8   that the awning was likely to immediately collapse.  "Where an

9   officer's particular use of force is based on a mistake of fact,

10  [the relevant inquiry is] whether a reasonable officer would have

11  or should have accurately perceived that fact."  Torres v. City

12  of Madera, 648 F.3d 1119, 1124 (9th Cir. 2011).  A jury would

13  thus need to weigh the conflicting evidence to determine whether

14  Officer Bailey's belief about the condition of the awning was

15  mistaken and, if it was, whether a reasonable officer arriving on

16  the scene would or should have determined that the awning did not

17  pose an immediate risk of falling.

18         Officer Bailey also indicated in his report and

19  testified at his deposition that he used no more force than

20  necessary to gain plaintiff's compliance with his demand to climb

21  out of the car.  (Apr. 1, 2015 Bailey Dep. at 47:3-20.)  Officer

22  Bailey recognized that he continued to use force even after

23  plaintiff verbally assented to his commands, but testified that

24  the continued force was necessary because plaintiff was still

25  resisting by bracing himself against the interior of the car.

26  (Id. at 47:21-49:3; see also Pl.'s Ex. A (first video) at 1:12

27  (showing that plaintiff said "all right," but Officer Bailey

28  continued to use the pain compliance technique on plaintiff's

8

1   wrist).)  Defendants' expert acknowledges that this alleged

2   resistance cannot be seen in the video, (Chapman Dep. at 35:7-

3   17), and plaintiff testified that he only "pulled away" because

4   the pain from the wrist hold was "excruciating," (Rosales Dep. at

5   91:15-25).  The jury must weigh these facts and the credibility

6   of each witness to determine whether Officer Bailey was

7   reasonable in continuing to use force after plaintiff verbally

8   indicated he would climb out of the car.

9          The video also shows that while Officer Bailey was

10  using the wrist hold, plaintiff informed Officer Bailey that his

11  foot was caught.  (Pl.'s Ex. A at 1:18.)  When plaintiff was

12  ultimately extracted from the car, the video confirms that his

13  foot was caught in the seatbelt and the assistance of a bystander

14  was necessary to untangle it.  (Id. at 1:59.)  If the jury

15  believes plaintiff's testimony that he was unable to climb out of

16  the car because his foot was caught and finds that Officer Bailey

17  heard plaintiff inform him of that dilemma, it could reasonably

18  find that any use of force to gain compliance with an impossible

19  request was unreasonable.

20         Plaintiff has also submitted testimony undermining the

21  accuracy and credibility of Officer Bailey's report and

22  recollection of the incident.  For example, in his report and at

23  his first deposition before he had seen the second video, Officer

24  Bailey repeatedly testified that plaintiff made "multiple

25  attempts" to walk back toward his car despite Officer Bailey's

26  demands that he remain seated on the curb.  (Apr. 1, 2015 Bailey

27  Dep. at 53:5-11, 54:2-8, 55:6-7, 55:21-24, 57:20-25, 59:3-4.)

28  After viewing the second video, (July 23, 2015 Dep. at 87:10-

89:14), Officer Bailey changed his testimony and testified at a
second deposition that plaintiff got up from a seated position
only once. (July 23, 2015 Bailey Dep. at 105:18-106:5.)  At his
first deposition, Officer Bailey also testified that he did not
force plaintiff to the ground before he was handcuffed and then
recanted that testimony at his second deposition. (Id. at 84:18-
87:9.)  This evidence, which could undermine Officer Bailey's
credibility, is precisely the type of evidence the jury must
weigh.

        The parties also present conflicting accounts as to the
force Officer Bailey used after he extracted plaintiff from the
vehicle.  For example, Officer Bailey testified in his first
deposition that he "used the bottom of [his] foot to push on the
lower leg . . . to get the knee joint to bend in a natural
position" so it was "easier" to "push" plaintiff to the ground.
(Apr. 1, 2015 Bailey Dep. at 70:20-24.)  Defendants' expert now
describes the technique as a "distraction" maneuver or strike
that was used to get plaintiff's attention. (Chapman Dep. at
70:16-23.)  Plaintiff, on the other hand, testified that Officer
Bailey violently slammed him to the ground and kicked him in the
lower back.  (Rosales Dep. at 105:21-108:11, 109:18-110:20.)
Plaintiff's expert testified that the gratuitous kick was
unnecessary and that officers are trained to use distraction
techniques during fight situations, not under the circumstances
of this case.  (Lichten Dep. at 72:10-73:6.)  The jury must
ultimately weigh this conflicting testimony, along with the video
of the incident and other relevant evidence, to determine what
force was actually used.

1      Moreover, defendants have not identified any

2  circumstance necessitating the use of force to immediately remove

3  plaintiff from his car other than the awning.  After Officer

4  Bailey removed plaintiff from his car, the only circumstances

5  allegedly necessitating Officer Bailey's use of force was that

6  plaintiff was concerned about his dog, not responding to Officer

7  Bailey's questions about whether he needed medical attention, and

8  tried on one occasion to walk toward his car.  (Apr. 1, 2015

9  Bailey Dep. at 52:16-21; July 23, 2015 Bailey Dep. at 105:18-

10 106:5.)

11     Defendants have not submitted any evidence suggesting

12 that Officer Bailey had any reason to suspect that plaintiff was

13 under the influence of any drugs or alcohol, that he was

14 combative or attempting to flee, or that he was suspected of

15 criminal activity.  After weighing all the factors, a jury could

16 easily find that a reasonable officer would not have felt it

17 necessary to resort to any force at all after plaintiff was

18 removed from his car.  See Bryan, 630 F.3d at 813 (Wardlaw, J.,

19 concurring in the denial of rehearing en banc) ("[While] police

20 officers need not employ the least intrusive degree of force . .

21 . the presence of feasible alternatives is a factor to include in

22 [the] analysis.") (internal quotation marks, citations, and

23 emphasis omitted).

24     Additionally, "even when police officers reasonably

25 must take forceful actions in response to an incident, and even

26 when such forceful actions are permissible at first, if the

27 officers go too far by unnecessarily inflicting force and pain

28 after a person is subdued, then the force, unnecessary in part of

1  the action, can still be considered excessive." <u>Guy v. City of</u>

2  <u>San Diego</u>, 608 F.3d 582, 589 (9th Cir. 2010).  Even if the jury

3  determines that Officer Bailey's initial use of force to get

4  plaintiff out of the car was reasonable, it must also weigh the

5  evidence and changing circumstances to determine whether

6  additional force throughout the incident, including Officer

7  Bailey's alleged "slamming" of plaintiff to the ground and

8  kicking him, was reasonable.[1]

9       The Ninth Circuit has also explained that "police

10 officers normally provide [] warnings where feasible, even when

11 the force is less than deadly, and that the failure to give such

12 a warning is a factor to consider." <u>Bryan</u>, 630 F.3d at 831.

13 Here, Officer Bailey never warned plaintiff prior to any of his

14 uses of force.  A jury could find that under the circumstances

15 Officer Bailey faced, the failure to warn plaintiff and give him

16 an opportunity to comply before resorting to force was

17 unreasonable.

18      Overall, a reasonable jury could easily find that the

19 force Officer Bailey used was excessive in light of the

20 circumstances he faced.  Plaintiff has thus established the

21 existence of genuine issues of material fact on his § 1983

22 excessive force claim against Officer Bailey.

23

24      [1]   At some point, Officer Bailey also had other emergency
   responders available to assist him.  According to Officer
25 Bailey's deposition, he was the first officer on the scene and
   additional emergency responders did not arrive until he had
26 removed plaintiff from his car.  (Apr. 1, 2015 Bailey Dep. at
   31:18-23, 67:16-23.)  Plaintiff, on the other hand, testified
27 that the paramedics and fire department were already on the scene
28 when Officer Bailey arrived.  (Rosales Dep. at 84:17-85:16.)

1              2.   Qualified Immunity

2              In suits under § 1983, "qualified immunity protects

3       government officials 'from liability for civil damages insofar as

4       their conduct does not violate clearly established statutory or

5       constitutional rights of which a reasonable person should have

6       known.'"  Pearson v. Callahan, 555 U.S. 223, 232 (2009) (quoting

7       Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  "For purposes

8       of qualified immunity, [the court must] resolve all factual

9       disputes in favor of the party asserting the injury."  Ellins v.

10      City of Sierra Madre, 710 F.3d 1049, 1064 (9th Cir. 2013).

11             To be clearly established, "existing precedent must

12      have placed the statutory or constitutional question beyond

13      debate."  Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012)

14      (internal quotation marks and citation omitted).  "The proper

15      inquiry focuses on whether 'it would be clear to a reasonable

16      officer that his conduct was unlawful in the situation he

17      confronted,' or whether the state of the law [at the time of the

18      incident] gave 'fair warning' to the officials that their conduct

19      was unconstitutional."  Clement v. Gomez, 298 F.3d 898, 906 (9th

20      Cir. 2002) (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001));

21      Hope v. Pelzer, 536 U.S. 730, 741 (2002).  The clearly

22      established inquiry "serves the aim of refining the legal

23      standard and is solely a question of law for the judge."  Tortu

24      v. Las Vegas Metro. Police Dep't, 556 F.3d 1075, 1085 (9th Cir.

25      2009).

26             Even if the law is clearly established, "an officer who

27      makes a reasonable mistake as to what the law requires under a

28      given set of circumstances is entitled to the immunity defense."

                                    13

1   Landry v. Berry, 533 F. App'x 702, 703 (9th Cir. 2013) (quoting

2   Boyd v. Benton County, 374 F.3d 773, 781 (9th Cir. 2004)).  "The

3   protection of qualified immunity applies regardless of whether

4   the government official's error is 'a mistake of law, a mistake

5   of fact, or a mistake based on mixed questions of law and fact.'"

6   Pearson, 555 U.S. at 231 (quoting Groh v. Ramirez, 540 U.S. 551,

7   567 (2004) (Kennedy, J., dissenting)).

8            Here, numerous factual disputes prevent the court

9   from meaningfully characterizing the right at issue in this case.

10  For example, the jury must determine whether a reasonable officer

11  would have perceived the steel awning as posing an emergency

12  situation that necessitated the immediate removal of plaintiff

13  from his car through the driver's side door.  A jury must also

14  determine whether plaintiff's foot was caught in the seatbelt at

15  the time Officer Bailey arrived and whether a reasonable officer

16  would have understood that plaintiff could not have easily

17  climbed out of the car because his foot was caught.  A jury must

18  also determine precisely what force was used after Officer Bailey

19  extracted plaintiff.

20           Until the jury resolves all of the disputed issues of

21  fact, the court cannot characterize the right at issue to assess

22  whether Officer Bailey violated clearly established law of which

23  a reasonable officer would have known.  See Santos, 287 F.3d at

24  855 n.12 ("[I]t is premature to [decide qualified immunity] at

25  this time, because whether the officers may be said to have made

26  a 'reasonable mistake' of fact or law, may depend on the jury's

27  resolution of disputed facts and the inferences it draws

28  therefrom.  Until the jury makes those decisions, we cannot know,

14

1   for example, how much force was used, and, thus, whether a

2   reasonable officer could have mistakenly believed that the use of

3   that degree of force was lawful.") (internal citation omitted);

4   see also Luchtel v. Hagemann, 623 F.3d 975, 989 (9th Cir. 2010)

5   (explaining that summary judgment should be granted "sparingly"

6   in excessive force cases "even with respect to the issue of

7   qualified immunity").

8           Accordingly, because plaintiff has established a

9   genuine issue of material fact on his Fourth Amendment excessive

10  force claim against Officer Bailey and numerous factual disputes

11  preclude the court from assessing qualified immunity at this

12  time, the court must deny Officer Bailey's motion for summary

13  judgment on that claim.

14        C.   *Monell* Claim

15          As § 1983 does not provide for vicarious liability,

16  local governments "may not be sued under § 1983 for an injury

17  inflicted solely by its employees or agents."  Monell v. Dep't of

18  Soc. Servs. of the City of N.Y., 436 U.S. 658, 693 (1978).

19  "Instead, it is when execution of a government's policy or

20  custom, whether made by its lawmakers or by those whose edicts or

21  acts may fairly be said to represent official policy, inflicts

22  the injury that the government as an entity is responsible under

23  § 1983."  Id.

24          Generally, a local government may be held liable under

25  § 1983 under three broad theories: (1) "when implementation of

26  its official policies or established customs inflicts the

27  constitutional injury," id. at 708 (Powell, J. concurring); (2)

28  "for acts of 'omission,' when such omissions amount to the local

1   government's own official policy," <u>Clouthier v. County of Contra

2   Costa</u>, 591 F.3d 1232, 1249 (9th Cir. 2010); and (3) "when the

3   individual who committed the constitutional tort was an official

4   with final policy-making authority or such an official ratified a

5   subordinate's unconstitutional decision or action and the basis

6   for it," <u>Clouthier</u>, 591 F.3d at 1250 (internal quotation marks

7   and citation omitted).

8          Here, plaintiff's theory of <u>Monell</u> liability rests on

9   the City of Chico Chief of Police's "Notice of Conclusion" issued

10  to Officer Bailey after an administrative review of the incident.

11  The notice states:

12

13      The administrative review for the complaint involving
        Joseph Rosales regarding the incident on June 10,

14      2014, has been concluded.  The finding regarding the
        allegation that you used excessive force during the

15      incident has been determined to be EXHONERATED.  You
        were in compliance with Department policy.  Consider

16      this matter closed with no further action necessary.

17  (Pl.'s Ex. G (Docket No. 17-1).)  Plaintiff argues that this

18  notice exposes the City of Chico to <u>Monell</u> liability because the

19  Chief of Police ratified Officer Bailey's conduct.[2]

20         Relying on <u>City of St. Louis v. Praprotnik</u>, 485 U.S.

21  112 (1988), the Ninth Circuit has "found municipal liability on

22  the basis of ratification when the officials involved adopted and

23  expressly approved of the acts of others who caused the

24  constitutional violation."  <u>Trevino v. Gates</u>, 99 F.3d 911, 920

25  (9th Cir. 1996).  In <u>Praprotnik,</u> Justice O'Connor explained,

26

27         [2]   There is no dispute in this case that the Chief of
        Police was a final policymaker for the City of Chico with respect

28      to use of force by the City's police officers.

16

1    "when a subordinate's decision is subject to review by the

2    municipality's authorized policymakers, they have retained the

3    authority to measure the official's conduct for conformance with

4    their policies."   485 U.S. at 127.   Under such circumstances,

5    "[i]f the authorized policymakers approve a subordinate's

6    decision and the basis for it, their ratification would be

7    chargeable to the municipality because their decision is final."

8    Id.

9           At the same time, the Supreme Court has unequivocally

10   and repeatedly emphasized that local governments can be held

11   responsible under § 1983 "when, and only when, their official

12   policies cause their employees to violate another person's

13   constitutional rights."   Id. at 122; see also Bd. of Cnty.

14   Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 405 (1997) ("To

15   the extent that we have recognized a cause of action under § 1983

16   based on a single decision attributable to a municipality, we

17   have done so only where the evidence that the municipality had

18   acted and that the plaintiff had suffered a deprivation of

19   federal rights also proved fault and causation.").   The Ninth

20   Circuit has similarly recognized that a plaintiff "cannot, of

21   course, argue that the municipality's later action (or inaction)

22   caused the earlier" use of force in the absence of "any pre-

23   existing policy."   Haugen v. Brosseau, 339 F.3d 857, 875 (9th

24   Cir. 2003), overruled on other grounds by, 543 U.S. 194 (2004).

25          In this case, it is not a mere ratification, but rather

26   the Chief of Police's pronouncement that Officer Bailey's alleged

27   use of force was "in compliance with Department policy" that

28   gives rise to a Monell claim.   This is "tantamount to the

17

1   announcement or confirmation of a policy for purposes of <u>Monell</u>."

2   <u>Id.</u> at 875.   The Chief of Police's finding that Officer Bailey's

3   use of force was "in compliance" with the City of Chico's

4   policies is more than sufficient to raise a genuine issue of

5   material fact with respect to whether the City of Chico had a

6   policy of using the force Officer Bailey did in this case.

7   Although the finding was made after the incident, it constitutes

8   clear evidence from which a rational jury could infer that the

9   policy existed before the incident and therefore was the moving

10  force that caused the injury.   If the jury ultimately concludes

11  that Officer Bailey used excessive force and that the use of

12  force comported with the City of Chico's policies, it would be

13  entirely consistent with <u>Monell</u> to hold the City of Chico liable

14  based on its policy promoting that use force.[3]

15          Accordingly, because plaintiff has raised a genuine

16  issue of material fact with respect to whether the City of Chico

17  had a policy that caused the constitutional violation alleged in

18  this case, the court must deny defendants' motion for summary

19  judgment on plaintiff's § 1983 <u>Monell</u> claim.

20      D.   <u>Bane Act Claim - California Civil Code Section 52.1</u>

21          The Bane Act gives rise to a claim when "a person . . .

22

23          [3]   Relying on plaintiff's response to defendants'
    statement of undisputed facts, defendants argue they are entitled
24  to summary judgment on plaintiff's <u>Monell</u> claim because plaintiff
    agreed it was "undisputed" that he "failed to provide evidence of
25  a policy . . . that in any way would have contributed to his
    alleged injuries."   (<u>See</u> Pl.'s Resp. to Defs.' Stmt. of
26  Undisputed Fact No. 47 (Docket No. 17-9).)   Statements of
    undisputed facts are not evidence and the court will not rely on
27  an erroneous concession in that type of document when it flatly
    contradicts the evidence before the court.
28

                                    18

whether or not acting under the color of law, interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion" with a right secured by federal or state law.  Cal. Civ. Code § 52.1(a).  "[A]ny individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States . . . has been interfered with, or attempted to be interfered with, as described in [the Bane Act] . . . may institute . . . a civil action for damages . . . ."  Id. § 52.1(b).  The California Legislature enacted the Bane Act in response to a rise in hate crimes, but it is not limited to such crimes and does not require proof of discriminatory intent.  See Venegas v. County of Los Angeles, 32 Cal. 4th 820, 843 (2004) (holding that "plaintiffs need not allege that defendants acted with discriminatory animus or intent, so long as those acts were accompanied by the requisite threats, intimidation, or coercion").

Generally, establishing an excessive force claim under the Fourth Amendment also satisfies the elements of section 52.1. See Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1105 (9th Cir. 2014) ("The City defendants concede in their briefs to us that a successful claim for excessive force under the Fourth Amendment provides the basis for a successful claim under Section 52.1."); Cameron v. Craig, 713 F.3d 1012, 1022 (9th Cir. 2013) ("Cameron asserts no California right different from the rights guaranteed under the Fourth Amendment, so the elements of the excessive force claim under Section 52.1 are the same as under § 1983."); cf. Venegas, 32 Cal. 4th at 843 ("We need not decide here whether section 52.1 affords protections to every tort

19

1    claimant, for plaintiffs in this case have alleged

2    unconstitutional search and seizure violations extending far

3    beyond ordinary tort claims."). Accordingly, because genuine

4    issues of material fact exist with respect to whether Officer

5    Bailey used excessive force in violation of the Fourth Amendment,

6    the court must also deny defendants' motion for summary judgment

7    on plaintiff's Bane Act claim.

8         E.   Battery and Negligence Claims

9              For his battery and negligence claims under California

10   law, plaintiff must show that the force Officer Bailey used was

11   unreasonable. See Bowoto v. Chevron Corp., 621 F.3d 1116, 1129

12   (9th Cir. 2010) ("Under California law, a plaintiff bringing a

13   battery claim against a law enforcement official has the burden

14   of proving the officer used unreasonable force."); Carter v. City

15   of Carlsbad, 799 F. Supp. 2d 1147, 1164 (S.D. Cal. 2011)

16   ("Negligence claims stemming from allegations of excessive force

17   by a police officer are also analyzed under the Fourth

18   Amendment's reasonableness standard."). The reasonableness

19   inquiry governing these state law claims is the same as the

20   inquiry governing plaintiff's Fourth Amendment excessive force

21   claim. See Hayes v. County of San Diego, 57 Cal. 4th 622, 632

22   (2013) (relying on the Graham reasonableness test when assessing

23   a negligence claim against police officers); Atkinson v. County

24   of Tulare, 790 F. Supp. 2d 1188, 1211 (E.D. Cal. 2011) (Wanger,

25   J.) ("Plaintiff's claim for negligence and battery flow from the

26   same facts as the alleged Fourth Amendment Violation for

27   excessive force and are measured by the same reasonableness

28   standard of the Fourth Amendment.") (citing Edson v. City of

20

1 | <u>Anaheim</u>, 63 Cal. App. 4th 1269, 1272-73 (4th Dist. 1998)).

2 |         Plaintiff seeks to hold Officer Bailey liable under
3 | common law battery and negligence for his use of force and the
4 | City of Chico vicariously liable for Officer Bailey's conduct.
5 | California Government Code section 820 provides that, "[e]xcept
6 | as otherwise provided by statute (including Section 820.2), a
7 | public employee is liable for injury caused by his act or
8 | omission to the same extent as a private person."  Cal. Gov't
9 | Code § 820.  With respect to public entities, section 815(a)
10 | provides that, "[e]xcept as otherwise provided by statute: A
11 | public entity is not liable for an injury, whether such injury
12 | arises out of an act or omission of the public entity or a public
13 | employee or any other person."  <u>Id.</u> § 815(a).  Pursuant to
14 | section 815.2(a), "[a] public entity is liable for injury
15 | proximately caused by an act or omission of an employee of the
16 | public entity within the scope of his employment if the act or
17 | omission would, apart from this section, have given rise to a
18 | cause of action against that employee or his personal
19 | representative."  <u>Id.</u> § 815.2(a).

20 |         Defendants do not dispute that Officer Bailey could be
21 | held liable for battery and negligence pursuant to section 820
22 | and that the City of Chico could be held vicariously liable under
23 | section 815.2(a).  They nonetheless argue that the court should
24 | grant their motion for summary judgment on plaintiff's battery
25 | and negligence claims because plaintiff failed to identify these
26 | particular statutes in his Complaint.  Defendants have not cited
27 | any authority requiring plaintiff to plead the existence of these
28 | commonly known statutes in order to allege cognizable state law

21

1 claims for battery and negligence.  Nor did defendants challenge

2 the adequacy of plaintiff's Complaint on a motion to dismiss.

3 While these statutes provide the legal framework for liability

4 against public employees and entities, defendants are not

5 entitled to summary judgment merely because the statutes are not

6 identified by their numbers in the Complaint.

7       Because plaintiff has established a genuine issue of

8 material fact with respect to whether Officer Bailey used

9 excessive force, the court must deny defendants' motion for

10 summary judgment on plaintiff's battery and negligence claims.

11     F.   <u>Evidentiary Objections</u>

12       Defendants raise numerous objections to the evidence

13 plaintiff submitted in opposition to their motion for summary

14 judgment.  Defendants first object to the video that Dough

15 Churchill indicates he took of the incident and uploaded to

16 YouTube.  (Churchill Decl. ¶¶ 2-4 (Docket No. 17-8).)  According

17 to defendants, the court should not consider the video because

18 it "is confusing, misleading and unfairly prejudicial because it

19 is heavily edited, it cuts at different stages of the incident

20 and includes time gaps" and "is not date stamped or timed

21 stamped."  (Defs.' Reply at 5:5-8.)  With allegations of

22 excessive force, video evidence is often the most helpful and

23 relevant evidence because it gives the jury an opportunity to

24 view what occurred and make factual findings without relying

25 exclusively on conflicting testimony.  Police departments are

26 free, and often encouraged, to ensure that their encounters with

27 the public are videoed and presumably those videos are "time

28 stamped" as defendants would prefer.

1            Here, defendants either did not elect or did not have

2   the equipment necessary to video this incident.  As media

3   coverage in recent years confirms, bystanders increasingly use

4   their video cameras or cell phones to fill the void of recorded

5   interactions with the police and public.  While defendants can

6   challenge the accuracy and completeness of Churchill's video at

7   trial, it is disingenuous to argue that it is prejudicial or

8   should be excluded because the technology used to record the

9   incident is not as advanced as the technology defendants could

10  have utilized.  The court therefore overrules defendants'

11  objection to consideration of the first video for purposes of

12  summary judgment.

13            Plaintiff obtained the second video from an anonymous

14  individual and therefore does not attempt to authenticate the

15  video with a declaration of the individual who recorded it.

16  Federal Rule of Evidence 901 provides that "the proponent must

17  produce evidence sufficient to support a finding that the item

18  is what the proponent claims it is" and that the evidence can be

19  in the form of testimony of a witness with knowledge that the

20  "item is what it is claimed to be."  Fed. R. Evid. 901(a),

21  (b)(1).  Plaintiff indicates that the video was given to him by

22  an anonymous man who contacted him after the incident and that

23  the video accurately reflects the incident.  (Rosales Decl. ¶¶

24  2-4 (Docket No. 17-7).)  Officer Bailey also viewed the video

25  prior to and during his second deposition and never suggested

26  that the video was not an accurate recording of the incident.

27  (July 23, 2015 Bailey Dep. at 87:12-89:7.)  The court therefore

28  finds that plaintiff has sufficiently authenticated the video

1   for purposes of opposing defendants' motion for summary judgment

2   and overrules defendants' objection to consideration of that

3   video.  Cf. Luong v. City & County of San Francisco, Civ. No.

4   11-05661 MEJ, 2013 WL 1191229, at *6 (N.D. Cal. Mar. 21, 2013)

5   (overruling objection to an anonymously recorded video when

6   plaintiffs could authenticate the video with their testimony "as

7   witnesses with knowledge of the events depicted in the video").

8        Without citing a single case supporting their position,

9   defendants also object to the declarations plaintiff submitted

10  because they were signed under penalty of perjury "under the laws

11  of the State of California."  Because 28 U.S.C. § 1746 permits a

12  general oath under penalty of perjury without reference to any

13  state or federal law, see 28 U.S.C. § 1746(2), plaintiff's

14  reference to state law is not fatal and defendants' objection is

15  overruled.

16       In what might be defendants' most frivolous objection,

17  defendants seek to exclude evidence because it "violated" the

18  protective order signed by the magistrate judge.  The protective

19  order provided that a party must file a motion to seal any

20  documents that were the subject of the protective order prior to

21  filing them.  In compliance with the protective order, plaintiff

22  filed a motion to seal exhibits subject to the protective order

23  and the court, in a written and reasoned decision, denied that

24  motion.  (See Docket No. 16.)  Defendants attempt to fault

25  plaintiff for failing to persuade the court that the documents

26  should be sealed.  Defendants attribute far too much

27  significance to the protective order.  Plaintiff complied with

28  the protective order by filing a request to seal the documents,

1   (Docket No. 14), and this court determined that the public had a

2   right to view the documents at issue.

3         Lastly, the court overrules defendants' objection to

4   the Statement of Chico Administrative Services Director, (Pl.'s

5   Ex. F (Docket No. 17-4)), as moot because the court did not rely

6   on the document in denying defendants' motion for summary

7   judgment.  The court also overrules defendants' objection to the

8   notice exonerating Officer Bailey because Rule 801's bar against

9   hearsay will not render the evidence inadmissible at trial.

10        IT IS THEREFORE ORDERED that defendants' motion for

11   summary judgment be, and the same hereby is, DENIED.

12   Dated:  October 20, 2015

13

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28